Although the majority relies on a military service presumption in its opinion, that opinion appears to me to be based upon the majority's belief that Nora was not mentally competent to choose his place of domicile. The rule in this regard is as follows:
 "The mere fact that a person is of partially unsound mind does not necessarily preclude him from establishing his domicile, as the question must depend entirely on the extent to which his reason has been impaired; in general, it may be stated that but a comparatively slight degree of understanding is required in order that his action may be recognized.
However, an adult person who has become a mental imbecile, or who has been judicially declared insane, is incapable of a voluntary change of domicile, and therefore retains the domicile which he had when he became insane, unless it is changed by some competent or authorized person or tribunal, or until the restoration of his sanity. . . ." (Footnotes omitted.) (Emphasis added.)
28 C.J.S. Domicile, § 12 (e) at 27 (1941).
Nora was never judicially declared insane; furthermore, he was not a "mental *Page 19 
imbecile." He carried on conversations with other people, helped the Turners with yard and household chores, attended church services, shopped for his own clothes, took care of his own money, and administered his own medication. In addition,Nora expressly stated his desire to remain with the Turners inAlabama and not to return to Louisiana except to visit. This was a clear choice of Alabama as his domicile, the place where he lived for 36 years. Moreover, Nora had a sufficient degree of understanding to choose his domicile.
Since all of the facts support the position that Nora was domiciled in Alabama, the trial court erred in finding that Louisiana was Nora's domicile and in applying Louisiana law to the distribution of his estate.